IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DARLENE GREENE ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV438 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Darlene Greene Rogers ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on October 22, 2013 and November 25, 2013, respectively, alleging a disability onset date of December 1, 2012 in both applications. (Tr. at 22, 209-18.)[1] Her applications were denied initially (Tr. at 93-112, 131-38) and upon

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #14].

reconsideration (Tr. at 113-30, 143-51). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 152-53.) Plaintiff, along with her non-attorney representative and an impartial vocational expert, attended the subsequent hearing on October 20, 2016. (Tr. at 22.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 33), and, on March 8, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-6.)

## II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 24.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> migraines, fracture of left distal radius, fibromyalgia, and chronic pelvic pain.

(Id.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 27.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform medium work with further limitations. Specifically, the ALJ found that Plaintiff

> can sit, stand, and walk for six hours in an eight hour workday; can push and/or pull subject to the lift and carry restrictions [of medium work]; can unlimitedly operate right and left foot controls; can frequently operate right hand controls; can unlimitedly operate left hand controls; has no limit in the ability to reach

5

overhead in all directions with her bilateral extremities; can frequently finger on the right and unlimitedly on the left; can frequently feel on the right and unlimitedly on the left; has no limit in the ability to climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, couch, and crawl; has no limit in the ability to communicate or see; can frequently be exposed to weather and wetness; can occasionally be exposed to dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, vibrations, and very loud noises; would have no limit in her ability to understand, remember and carry out instructions, utilize her judgment, appropriately interact with and respond to supervisors, coworkers, and the public at large, and dealing with changes in the work setting; and time off tasks would be accommodated by normal breaks.

(Tr. at 28.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could perform her past relevant work as an administrative clerk and a hair stylist. (Tr. at 31.) The ALJ also made an alternative finding at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 31-33.)

The present action for judicial review has been brought by the Plaintiff *pro se*. This Court is required to construe such *pro se* pleadings liberally to allow for the development of a potentially meritorious claim. Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)).

Here, Plaintiff now challenges the ALJ's RFC assessment on several grounds. Specifically, she contends that the ALJ mischaracterized Plaintiff's testimony and the medical evidence. She also contends that the ALJ improperly evaluated her mental impairments, particularly in light of a subsequent psychiatric hospitalization. Finally, she notes that she recently filed a new Social Security Disability claim, was sent to a consultative examination, and was determined to be disabled. Plaintiff contends that this additional evidence should be

6

taken into account. Having considered Plaintiff's contentions, the Court agrees that remand is necessary, for the reasons set out below.

    A.    Mischaracterization of the record

Plaintiff first argues that in reaching his determination, the ALJ mischaracterized some of Plaintiff's testimony as well as the medical records. A review of the record, including the hearing transcript, substantiates at least some of Plaintiff's claims.

For example, the ALJ repeatedly relied on an alleged "gap" in Plaintiff's treatment records. The ALJ specifically noted that "[d]espite alleging disabling symptoms and limitations, [Plaintiff] went an extended period without treatment. From July 2014 to February 2016, [Plaintiff] did not follow up with her treating sources." (Tr. at 29.) In the briefing, the Commissioner likewise contends that "Plaintiff did not receive medical treatment from her treating providers for an extended period of 19 months, from July 2014 through February 2016," and the Commissioner cites this "significant gap" as part of the substantial evidence supporting the ALJ's RFC determination in this case. (Def. Br. [Doc. #26] at 9.) However, the February 25, 2016 treatment note cited by the ALJ in support of this assertion actually states that Plaintiff "was last seen in August of 2013 and has been lost to follow up since then." (Tr. at 508.) Upon closer inspection, this note only refers to Plaintiff's gynecological care. Plaintiff's visit summary from the Downtown Health Plaza lists at least nine office visits with various providers during the time period identified by the ALJ: on July 28, 2014, October 6, 2014, November 18, 2014, February 2, 2015, June 17, 2015, August 26, 2015, November 2, 2015, December 1, 2015, and February 25, 2016, plus an emergency department visit on October 7, 2015. (Tr. at 391, 454, 405, 415, 422, 427, 433, 442, 469, 506.) It is not clear if

the ALJ simply overlooked these records or just erroneously concluded that there was a "gap" in treatment. Either way, it is difficult to view this mischaracterization of the evidence as simply a harmless misstatement, particularly in light of the ALJ's reliance on this assertion as a basis for find that Plaintiff's statements regarding the "intensity, persistence and limiting effects of [her] symptoms are not generally consistent with the medical evidence and other evidence in the record." (Tr. at 30.) Specifically, the ALJ found that "[Plaintff's] allegations are inconsistent with the treatment history. She had significant gaps in treatment." (Tr. at 30.) As noted above, there are no such gaps in Plaintiff's treatment. Thus, the ALJ's determinations in reliance on this mischaracterization of the evidence are not supported by substantial evidence.

B. Mental Health Impairments

Plaintiff also contends that the ALJ failed to fully evaluate her mental health impairments. At step two of the evaluation process, the ALJ concluded that Plaintiff's mental health impairments were not severe impairments, finding specifically that her depression does not cause more than minimal limitations in her ability to perform basic work activities. (Tr. at 25.) Plaintiff challenges several of the ALJ's findings made in support of this assertion. For example, the ALJ found that Plaintiff "attends church twice a week" and "goes door to door witnessing for the church." (Tr. at 25.) However, the record reflects that Plaintiff calls in to listen to services but had not attended church for at least a year prior to the hearing and had not gone door to door, instead sending cards. (Tr. at 62.) More materially, the ALJ relied on the fact that Plaintiff "stopped taking psychotropic medications in May 2014." (Tr. at 26.) However, the record reflects that she was subsequently prescribed Buspirone in June 2015

8

(Tr. at 407), and it is listed as a continued prescription on her medical records in 2015 and 2016, and she was subsequently prescribed Elavil in February 2016 (Tr. at 471), and Duloxetine in April 2016 (Tr. at 451).[4]

Moreover, as noted by Defendant, the ALJ relied on the fact that "[t]here is no evidence of emergency treatment for psychiatric problems, psychiatric hospitalization, participation in a mental health day treatment program, or psychotherapy in the record." (Tr. at 26.) However, there is indication in the record that Plaintiff attended psychotherapy. (Tr. at 83.) Even more importantly, new evidence was submitted to the Appeals Council reflecting that Plaintiff became suicidal and was admitted for inpatient psychiatric hospitalization for seven days in January 2017. This evidence was accepted by the Appeals Council and incorporated into the record, but the Appeals Council concluded that the evidence would not change the administrative decision. (Tr. at 2.)

As to this issue, the applicable regulations "specifically permit claimants to submit additional evidence, not before the ALJ, when requesting review by the Appeals Council. In such cases, the Appeals Council first determines if the submission constitutes 'new and material' evidence that 'relates to the period on or before the date of the [ALJ's] hearing decision.'" Meyer v. Astrue, 662 F.3d 700, 704-05 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.968, 404.970(b)). "Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" Id. (citing Wilkins v. Secretary of Health & Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991)). It is up

---

[4] Plaintiff testified to side effects from the medication, and although her testimony was not clear, she did testify that she was taking Buspirone for her depression. (Tr. at 81, 83.)

9

to the Appeals Council to decide in the first instance whether additional evidence meets these criteria and will be considered. If the Appeals Council concludes that the additional evidence meets these criteria, the Appeals Council must then consider the new evidence along with the entire record in deciding whether to grant review of the ALJ's decision. See Wilkins, 953 F.2d at 95-96. In this case, the Appeals Council addressed Plaintiff's "new evidence," and stated that:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of evidence currently of record.
>
> We concluded that the additional evidence does not provide a basis for changing the Administrative Law Judge's decision.

(Tr. at 2.) Thus, it appears that the evidence was accepted as new and material evidence, but the Appeals Council concluded that it did not "provide a basis for changing the Administrative Law Judge's decision." However, it is not clear how the evidence of a week-long inpatient psychiatric hospitalization is consistent with a finding of no severe mental impairments, especially where the ALJ relied on the lack of emergency treatment for psychiatric problems or psychiatric hospitalization to support the determination in this case that Plaintiff did not have a severe mental impairment. The Court of Appeals for the Fourth Circuit has held that where the Appeals Council accepts new and material evidence but declines to grant review of the ALJ's decision, no specific explanation is required, but if the new evidence fills an evidentiary gap relied upon by the ALJ, or competes with evidence relied on by the ALJ, and "no fact finder has . . . attempted to reconcile that evidence with the conflicting and supporting

evidence in the record," the court will not undertake that analysis in the first instance, since "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder." Meyer, 662 F.3d at 707. In this case, the psychiatric hospitalization records, accepted into the record by the Appeals Council, have not been addressed by a fact finder but potentially leave the ALJ's determination regarding Plaintiff's lack of severe mental impairments unsupported by substantial evidence, and would need to be addressed by the ALJ or the Appeals Council in the first instance.

C. Back Pain and Fibromyalgia and Development of the Record

Finally, the Court notes that Plaintiff also raises issues related to her fibromyalgia and back pain. With respect to those issues, the ALJ considered Plaintiff's fibromyalgia as a severe impairment but did not identify Plaintiff's back pain as a separate impairment (either severe or non-severe) at step two. In assessing the RFC, the ALJ noted that with respect to her back pain, Plaintiff "had only mildly limited range of motion in her lumbar spine," and "did not report back pain until June 2013, six months after the alleged onset date." (Tr. at 29.) However, the records reflect that Plaintiff reported back pain on February 2, 2012, prior to the alleged onset date, and was diagnosed with Lumbago. (Tr. at 341.) She again reported back pain on April 3, 2013, with tenderness on examination (Tr. at 343), and she went to the emergency department with complaints of back pain in June 2013. (Tr. 359, 356.) She subsequently lost her health insurance and began receiving treatment at a free health clinic. Notably, the clinic records reflect that she continued to complain of back pain and fibromyalgia, but as of February 12, 2014, she had never had a workup for the cause of her pain. (Tr. at 356, 359, 364.) There are no x-rays or MRI scans of Plaintiff's back in the

11

record.[5] No treating source provided an opinion, and no consultative examination was conducted. The ALJ gave little weight to an FCE submitted by Plaintiff from a physical therapist, and therefore the only opinion evidence in the record was from the non-examining state agency consultants, creating some question with regard to the adequacy of the development of the record. See 20 C.F.R. §§ 404.1517, 404.1519a.[6]

Moreover, in considering this record, the Court notes that Plaintiff contends that after the denial by the Appeals Council in this case, a new disability application was filed on her behalf, and she was scheduled for a consultative examination with a "Social Security doctor." (Pl. Br. [Doc. #24] Ex. 4.) Plaintiff contends that she was sent for x-rays, and that after the examination and x-rays, her claim was approved. This contention raises the question whether the new administrative decision constitutes new and material evidence that would require a remand under sentence six of § 405(g). See Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991) (describing remands under sentence six of 42 U.S.C. § 405(g), in which "the district court does not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to the

---

[5] A chest x-ray ordered for cardiovascular issues in June 2016 did show moderate degenerative changes in her shoulder. (Tr. at 475-76.) In addition, Plaintiff submitted to the Court records from October 2011, prior to the alleged onset date, reflecting that in 2011, she had "mild convex left scoliosis at L2" with "5 lumbar type vertebral bodies" and "mild degenerative disease and facet hypertrophy." (Pl. Br. [Doc. #24] Ex. 1.) These records are not in the administrative record, nor are there any updated x-rays for the period after the alleged onset date.

[6] The decision to order a consultative examination is within the discretion of the Commissioner. Bishop v. Barnhart, 78 F. App'x 265, 268 (4th Cir. 2003). However, a hearing officer "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir.1986). Development of the record may include ordering consultative examinations when the evidence as a whole is not sufficient to support a decision. 20 C.F.R. § 404.1519a(b). The Fourth Circuit has held that "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded." Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980).

correctness of the administrative determination. Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding."). In an unpublished decision, the Court of Appeals for the Fourth Circuit noted that a subsequent administrative decision awarding benefits itself "does not constitute new and material evidence under § 405(g)," but "the evidence supporting the subsequent decision" may constitute new and material evidence under sentence six. Baker v. Commissioner, 520 F. App'x 228 (4th Cir. May 6, 2013) (citing Allen v. Commissioner, 561 F.3d 646, 653 (6th Cir. 2009)); see also Dobbin v. Colvin, No. 1:13CV558, 2016 WL 4250338 (M.D.N.C. August 10, 2015). Thus, the fact that Plaintiff was subsequently approved for disability may not alone constitute new and material evidence that would require a remand under sentence six of § 405(g), but the evidence underlying the determination is potentially new and material evidence, particularly given the lack of consultative examination or x-rays in the present record. Plaintiff has not submitted that evidence, but has instead noted that it is "in her Social Security file." (Pl. Br. Ex. 4.) Given Plaintiff's *pro se* status, the Court could direct Defendant to provide that evidence so that the Court can consider the need for a remand under sentence six. However, it appears that it is unnecessary to undertake such a further determination of whether remand is required under sentence six, given the multiple issues noted above warranting a remand under sentence four.[7]

---

[7] The fourth sentence of § 405(g) authorizes a court to enter "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

In this case, given the issues discussed above, the Court is unable to conclude that substantial evidence supports the ALJ's determinations. Therefore, a sentence four remand appears to be appropriate and would provide for correction of the mischaracterizations of the record, for consideration of the medical records including the records from 2014 and 2015 potentially overlooked by the ALJ, for initial review and consideration by a fact finder of the new psychiatric records accepted by the Appeals Council, and for development of the record as needed. In addition, because the matter would be subject to full review on remand, the ALJ would also be able to consider any additional evidence obtained in connection with the later disability application.[8] Therefore, the Court will recommend that this case be remanded under sentence four of § 405(g), in light of the multiple issues noted above which leave the Court unable to conclude that substantial evidence supports the ALJ's determinations.

If the Commissioner believes that some other course or remedy is more appropriate, taking into account the issues identified above, she may file a request for reconsideration within 14 days, setting out the statutory and regulatory basis for the request, with supporting case law. Any such request should also include Plaintiff's subsequent disability determination and the new evidence relied upon for that determination, for further consideration as appropriate.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand

---

[8] To the extent there may be some question as to when Plaintiff became disabled, remand would also allow for administrative consideration of the alleged onset date and development and analysis of the evidence in that regard by the ALJ. See Bailey v. Chater, 68 F.3d 75, 79 (4th Cir. 1995); see also Bird v. Commissioner, 699 F.3d 337, 345 (4th Cir. 2012); SSR 83–20, 1983 WL 31249 (1983).

the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #25] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #24] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 28th day of August, 2018.

                                      /s/ Joi Elizabeth Peake
                                    United States Magistrate Judge